IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CHRISTOPHER BERNAL,

      Petitioner,

v.                                CIV 09-0058 MCA/KBM

JAMES JANEKA, Warden, et al.,

      Respondents.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Christopher Bernal's petition seeking habeas relief.  *See Doc. 1.*  Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g.,* A*bdul-Kabir v. Quarterman,* 550 U.S. 233, ___, 127 S. Ct. 1654, 1664 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008), *petition for cert filed (2/23/09).*  Respondents assert that the petition is untimely, as well as procedurally-defaulted and without merit, and should be dismissed with prejudice.  *See Doc. 11* at 6-9.  I find the timeliness issue dispositive and recommend that the petition be dismissed on that basis.

# I.  The Petition Raises Claims Under § 2254 and § 2241, Both Subject To The § 2244 Statute of Limitations

In February 2000, Petitioner pleaded guilty to aggravated burglary with a deadly weapon, armed robbery, and assault with intent to commit a violent felony. The plea agreement notes that, due to four prior felony convictions, Petitioner was subject to be sentenced under the "habitual offender statute." *Doc. 11-2* at 11. Petitioner mades two qualitatively different challenges to his conviction and sentence.

In the early state proceedings, Petitioner challenged his plea as involuntary, arguing that he was not coherent during the proceedings due to medication and his attorney failed to bring that to the court's attention. *See id.* at 19, 22.  In the later proceedings, he challenged how the "good time" credits on his sentence were being calculated, asserting that the sentences for the firearm and habitual offender enhancements should be separated from the other sentences and calculated differently. *See Doc. 11-3* at 4.  Both types of claims are repeated in the federal petition. *See Doc. 1* at 6, 7, 9.[1]

---

[1] *See Doc. 1* at 6 (Petitioner asserts he was "under heavy medication that rendered him incoherent as to the plea proceedings" and, therefore, he did not "fully understand the full extent of the plea which took away any voluntariness of the plea making it void and subject to collateral attack for violation of his constitutional rights to due process."); *id.* at 7 (because of his "mental state of being heavily medicated during the plea proceedings, defense counsel has  duty to

Although the federal relief for both types of challenges lies in habeas corpus, 28 U.S.C. § 2254 governs the challenge to the plea and 28 U.S.C. § 2241 governs the challenge to the execution of the sentence. *E.g., Dunn v. Workman,* 172 Fed. App'x 238, 239 (10th Cir. 2006) (citing *Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002) and *McIntosh v. U.S. Parole Comm'n,* 115 F.3d 809, 811 (10th Cir. 1997)). The AEDPA one-year statute of limitations in 28 U.S.C. § 2244 applies to both types of habeas proceedings. *E.g., Burger v. Scott,* 317 F.3d 1133, 1138 (10th Cir. 2003) (AEDPA one-year statute of limitations codified at 28 U.S.C. § 2244(d), applies to § 2241 habeas actions); *Miller v. Marr,* 141 F.3d 976, 977-78 (10th Cir.) (rejecting Suspension Clause challenge in § 2254 case), *cert. denied,* 525 U.S. 891 (1998).

The limitations period begins to run from the later of four different events, only two of which are implicated here – "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

---

properly inform the court;" if trial court had been informed, it would have "had a duty to have a hearing to properly determine Petitioner's competency to stand trial/or in the understanding to continue with the entry of the plea;" counsel's failure and the trial court's consequent failure constituted a "direct violation of Petitioner's due process and the right to have effective assistance of counsel") (spelling correction supplied); *id.* at 9 ("Petitioner . . . should not be made to serve the firearm and habitual enhancement part of his sentence as part of his basic sentence . . . Petitioner should be allowed to earn up to 30 days per month (50%) rather than (4) days per month. Because the enhancement is a separate sentence by the State combining them, it's an illegal sentence in violation of Petitioner's due process right.") (certain grammar and spelling corrections supplied).

such review," 28 U.S.C. § 2244(d)(1)(A), and "the date on which the predicate of the claim or claims presented could have been discovered through the exercise of due diligence," *id.,* § 2244(d)(1)(D). *See, e.g., Dunn,* 172 Fed. App'x at 140. I discuss each separately.

## II.  Plea Claims Are Time-Barred

In May 2000, State District Judge John W. Pope accepted Petitioner's plea and sentenced him to, among other things, a total of thirty-four years incarceration for the "concurrent" sentences he imposed. *See Doc. 11-2* at 1-3. The description of the sentences as concurrent was an obvious mistake because none of the individual sentences exceeded nine years and, when added together, totaled thirty-four years. *See id.* at 2.

In August 2000, Petitioner's counsel filed a motion to reconsider sentence to bring "mitigating factors . . . to the Court's attention." *Id.* at 17. The facts constituting mitigation are not in the record, but the motion was evidently successful because on February 12, 2001, Petitioner's sentence was amended. *Id.* at 4. The new judgment suspended ten years of the sentence for a total of twenty-four years incarceration. *See id.* at 6. Again, this amendment repeated the mistake of describing the sentences as "concurrent." *See id.* at 5.

4

New Mexico allows thirty days for an appeal of a criminal conviction, regardless of whether it is based on a plea or trial. If no notice of appeal is filed, the conviction becomes "final" for AEDPA purposes on the last date the notice of appeal could have been timely filed. *See e.g., Uecker v. Romero,* 290 Fed. App'x 154, 155 (10th Cir. 2008) (case involving plea in New Mexico courts – "Mr. Uecker's judgment of conviction and sentence were entered on July 17, 2001 and became final on August 16, 2001, when the thirty-day period to file a notice of appeal expired. *See* N.M.R.A. 12-201(A)(2)."), *petition for cert. filed 2/16/09.*

Here, thirty days from the February 12th judgment fell on Wednesday, March 14, 2001. Some two years later, Petitioner challenged the plea as involuntary in a state habeas proceeding initiated February 11, 2003. *See id.* at 18. Following a response from the State and a reply by Petitioner, *see id.* at 40-81, Judge Pope summarily denied relief on the merits on November 4, 2003, stating that "the allegations contained in the Petition are without factual and legal merit and are insufficient to grant such relief," *id.* at 82. There were no further proceedings in state court or in this Court at that time.

Moreover, by the time the state proceedings were instituted, the federal statute of limitations had long expired. *E.g., Laurson v. Leyba,* 507 F.3d 1230, 1232 (10th Cir. 2007) ("Although the one-year period is tolled while state postconviction

review is pending, *see* 28 U.S.C. § 2244(d)(2), the one-year period had long expired before Mr. Laurson filed for state postconviction relief in December 2001."); *Barrientos v. Hightower,* 34 Fed. App'x 611, 612 (10th Cir. 2002) ("A second application for state post-conviction relief, filed on July 3, 2000 did not toll the limitations period because it was filed after the AEDPA's one-year limitation period expired.").  Thus, the § 2254 aspect of the petition is time-barred.

## III.  Good Time Claim Is Also Time-Barred

Respondents did not attach all of the state documents to their Answer, so some of the references in this section are taken from the docket sheet that was attached and is also available online.  In October 2004, Petitioner's sentence was again amended to correct the "concurrent" language mistake and direct that the sentences be served consecutively.  This second amendment appears to have been done *sua sponte* by Judge Pope, *see Doc. 11-2* at 9 and *Doc. 11-4* at 58, and does not appear to have been the triggering event giving Petitioner's "notice" of his good time claim because he did not act for almost nineteen months.

Petitioner instituted a second round of state post-conviction proceedings on May 17, 2006 by documents docketed as "Request For A Motion to Clarify Judgment and Sentence Hearing" and "Mtn/Petition to Reopen Motion to Amend

Motion for Clarification of Judgment and Sentence." *See Doc. 11-4* at 57 (docket

entries dated 5/17/06). The "Petition To Amend Motion For Clarification of

Judgment and Sentence (Sentencing Structure)" that is part of the federal record

provides that Petitioner was challenging the way his good time credits were being

calculated. *See Doc. 11-3* at 1, 4.

 For the purposes of discussion, I will assume that the earliest date Petitioner

"discovered" his good time credit claim was the date he signed his second state

habeas petition – May 9, 2006. Nevertheless, even if I use the date he filed these

pleadings – May 17, 2006 – the federal petition is still time-barred.[2]

 These post-conviction motions were assigned to another judge, who

temporarily took over the proceedings. Judge Pope returned later. *See Doc. 11-4*

(entry dated 2/4/08 by sentencing Judge John W. Pope acting on a third state

habeas proceeding filed by Petitioner); *with id.* at 56-58 (Judge Kenneth G. Brown

assigned the second state habeas proceeding initiated by Petitioner). Although the

new judge acted quickly, it appears that Petitioner was confused and did not

---

 [2] This is a generous assumption. Other evidence in the record points to discovery at an earlier date. For example, Petitioner's argument was evidently based on similar arguments other prisoners were making, as evidenced by a decision he later attached to later state pleadings. That attachment is an August 2006 decision from a judge in the Ninth Judicial District who granted state habeas relief stating the petitioner there was "entitled to . . . good time . . . credit at a rate of 50% for the 4 year habitual offender enchancement (sic) of the aggravated battery convictions in the original Judgment and Sentence." *Doc. 11-4* at 15.

actually understand that his action had been dismissed.  I set forth the chronology of events to illustrate this conclusion.

Pursuant to a scheduling order, the State filed a response asserted that Petitioner's assertions had no merit because "enhanced" sentences are in fact "part and parcel of a basic sentence" under New Mexico's sentencing statutes.  *Doc. 11-3* at 15-18.  Alternatively, the State argued that the claim had not been exhausted through prison administrative remedies and that the second state petition was successive and unverified.  *Id.* at 18-19.  Before the judge ruled, Petitioner filed an order for "free process," which had been granted, and other motions that were not ruled on – requests for appointment of counsel, a request for hearing, and requests for "summary judgment."  *See Doc. 11-4* at 56-57 (entries dated 5/18/06 to 6/21/06).

On June 28, 2006, the presiding judge agreed with the State and summarily dismissed Petitioner's "petition for summary judgment on the Pleadings for Petition for Clarification on Judgment and Sentence" because he "concur[red] with the arguments of the State . . . in their response."  *Doc. 11-3* at 20.  After this order was entered, between July 14, 2006 and March 26, 2007, Petitioner filed a "traverse," a motion for "ruling on pending motions for appointment of counsel and motion to amend judgment and sentence for clarification," a request for hearing on

the same, and unspecified correspondence.  None were addressed by the state

court.  *See Doc. 11-4* at 55-56.

On June 1, 2007, the court received a letter Petitioner had written to Judge

Pope.  It that indicates Petitioner believed the action was still pending because not

all of his motions had been addressed:

> I have attempted a number of times by way of request for
> hearings to have my motion for clarification of judgment
> and sentence; on May 18, 2006 it was ordered by the
> court for the District Attorney to file a response to such
> motion within 30 days of the filing of such, of June 19,
> 2006, because the State failed to file a response by such
> date on June 21, 2006, I filed a motion for summary
> judgment on the pleadings based that the state had failed
> ot serve me a copy which they had in fact filed by June
> 21, 2006, making my motion for summary judgment
> premature, and on June 28, 2006, this Court issued its
> order denying my motion for summary judgment in light
> of the State's response filed timely.  *However, in such
> order it never addressed the issues raised in the original
> motion for clarification of the judgment and sentence, nor
> any other pending motions such as appointment of
> counsel.*
>
> In order for me to properly pursue my claims on appeal I
> need a final order disposing the original motion filed on
> May 17, 2006, over a year ago.
>
> Please address this matter and send me a copy of any such
> order so I can properly proceed.

*Doc. 11-3* at 21-23 (emphasis added).  Again, there was no court response, *see*

*Doc. 11-4* at 55-56, so Petitioner then followed with a September 2007 "successive" state habeas petition, raising the same challenge to the calculation of his good-time credits as he had before, *see Doc. 11-3* at 24-53.  Judge Pope summarily denied it on February 4, 2008 as without merit.  *Id.* at 54.

Petitioner then filed a notice of appeal in the trial court, *id.* at 55, and also a petition for a writ of mandamus in the New Mexico Supreme Court, *Doc. 11-4* at 1.  The Supreme Court denied the mandamus action on March 24, 2008.  *Id.* at 22.  The appeal concluded on April 21, 2008, with the New Mexico Supreme Court's denial of certiorari.  *See id.* at 52.  Thereafter, Petitioner did not act quickly.  He waited almost another year before he signed and filed his federal petition in January 2009.  *See Doc. 1* at 1, 13.

For the good time credits claim, the ADEPA statute of limitations began to run, at the latest, on May 17, 2006 and was simultaneously tolled until the state proceedings ended with the June 28, 2006 denial to his challenge of the good time calculations.  Petitioner thus should have pursued an appeal by Friday, July 28, 2006.  He did not, evidently confused about the effect of the judges' order.  However, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."  *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (quotation omitted), *cert. denied,* 531 U.S. 1194 (2001).  Thus, the

record does not contain anything that would establish the requisite extraordinary circumstances entitling Petitioner to equitable tolling.[3]

The AEDPA statute started to run unabated on July 28, 2006 and ran for almost a year before it was arguably tolled again by Petitioner's June 1, 2007 letter until the subsequent state proceedings ended in April 2008.  At that point Petitioner had two months to institute federal proceedings, but he did not.  Again, the federal statute had long expired when he finally acted in January 2009.  To be timely under the "anniversary method," the latest date the federal petition would have needed to be signed, absent tolling, was on or before Monday, July 30, 2007.

Wherefore,

IT IS HEREBY RECOMMENDED that the federal petition, whether characterized as a § 2254 or § 2241 petition, be dismissed as time-barred.

---

[3] *E.g., Jamison v. Jones,* 197 Fed. App'x 743, 746 (10th Cir. 2006) ("Jamison's claim for equitable tolling based on his lack of knowledge of his legal rights arising from his illiteracy and lack of direct access to a law library.  After reviewing the record, we agree that Jamison has failed to demonstrate either that extraordinary circumstances beyond his control prevented him from filing his petition on time, or that he diligently pursued his claims throughout the period that he seeks to toll.  *See Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998).  Illiteracy alone does not merit equitable tolling.  *See Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir. 1999) (holding that ignorance of legal rights, even if due to illiteracy, does not merit equitable tolling) [, *cert. denied,* 528 U.S. 1007 (1999)].  Further, not having direct access to the prison law library, and being required to wait a period of days to receive requested materials cannot excuse a five-year delay in filing his § 2254 petition.  *See Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) ('[A] claim of insufficient access to relevant law . . . is not enough to support equitable tolling.')").

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.


_____
UNITED STATES MAGISTRATE JUDGE